UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Application of Barthélémy Samuel Jean Dessaint for an Order Pursuant to 28 U.S.C. § 1782 Compelling the Production of Documents and Testimony by Christie's, Inc. | ECF CASE<br><br>13-MC-00099 |

### MEMORANDUM OF LAW OF
### JEAN-CHARLES LIGNEL IN SUPPORT OF HIS MOTION FOR SANCTIONS

Dated: February 4, 2014

CAHILL PARTNERS LLP

John R. Cahill
Ronald W. Adelman
Paul S. Cossu
70 West 40th Street
New York, NY 10018
(212) 719 – 4400

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

SUMMARY OF FACTS ......................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

I.        Standard for Sanctions ................................................................................................. 5

II.       Dessaint and His Counsel Should be Sanctioned For Misleading the Court
and For Failing to Provide Lignel With the Required Notice of the Subpoena .................. 6

        A.      Dessaint and His Counsel Were Required to
Provide Lignel with Notice of the Subpoena to Christie's ...................................... 6

        B.      Dessaint and His Counsel's Failure to Provide Prior
Notice of the Subpoena to Lignel Constitutes Sanctionable Conduct .................... 7

              i.      Dessaint's Application Circumvented the
Paris Court, Which Authorized the Paris Court
Experts, *Not Dessaint*, to Seek Information from Christie's ...................... 9

              ii.     Dessaint Circumvented the Paris Court's Specific
Limits on the Discovery that Could be Sought from Christie's ................. 9

CONCLUSION ...................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
262 F.R.D. 293 (S.D.N.Y. 2009) .................................................................................................. 6

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........................................................................................................................ 5

*Fox Indus., Inc. v. Gurovich*,
No. CV 03-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006) ..................................................... 8

*In re Biovail Corp. Sec. Litig.*,
247 F.R.D. 72 (S.D.N.Y. 2007) .................................................................................................. 10

*In re Letter of Request From the Supreme Court of Hong Kong* ("*Hong Kong*"),
138 F.R.D. 27 (S.D.N.Y. 1991) .................................................................................................... 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ...................................................................................................................... 2

*Kenney, Becker LLP v. Kenney*,
No. 06 Civ. 2975, 2008 WL 681452 (S.D.N.Y. Mar. 10, 2008) ........................................ 8, 10, 11

*Matter of Beiny*,
132 A.D.2d 190 (1st Dep't 1987) .............................................................................................. 3, 7

*Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*,
Nos. 06 Civ. 7764 & 06 Civ. 13516, 2008 WL 3833238 (S.D.N.Y. Aug.15, 2008) ...................... 6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ...................................................................................................................... 2

*Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*,
196. F.R.D. 220 (W.D.N.Y. 2000) ..................................................................................... 7, 8, 10

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir. 1986) ........................................................................................................ 5

*Revson v. Cinque & Cinque P.C.*,
221 F.3d 71 (2d Cir. 2000) ............................................................................................................ 5

*Roberts v. New York*,
295 U.S. 264 (1935) ...................................................................................................................... 1

*Schlaifer Nance & Co. v. Estate of Warhol*,
194 F.3d 323 (2d Cir. 1999)......................................................................................................5-6

**Statutes & Rules**

28 U.S.C. § 1782..................................................................................................................*Passim*

Fed. R. Civ. P. 45 ............................................................................................................ 1, 2, 4, 6, 8

**Other Authorities**

H. Grotius, *De Jure Belli ac Pacis* (Book 1, Chapter 1) (1625) ........................................................ 1

Interested party Jean-Charles Lignel ("Lignel"), by his attorneys, Cahill Partners LLP, submits this Memorandum of Law in support of Lignel's motion for sanctions, pursuant to this Court's inherent power, against Barthélémy Samuel Jean Dessaint ("Dessaint") and his counsel, Schindler Cohen & Hochman LLP ("Dessaint's Counsel"), for (1) failing to provide Lignel with notice of a subpoena (the "Subpoena") Dessaint served upon Christie's, Inc. ("Christie's") through a 28 U.S.C. § 1782 proceeding, and (2) misleading the Court that Dessaint had the authority to seek confidential documents from Christie's concerning Lignel when the French court overseeing the foreign proceeding at issue (the "Paris Court") specifically denied Dessaint such authority and only empowered certain experts appointed by the Paris Court to do so.[1] Lignel respectfully requests that this Court award him the attorneys' fees and costs he has incurred in this matter, as well as an appropriate award sufficient to deter further such conduct by Dessaint.

**PRELIMINARY STATEMENT**

Dessaint, in violation of Federal Rule of Civil Procedure 45 and the due process right of notice and an opportunity to be heard,[2] failed to serve Lignel (who has a home right here in

---

[1] Lignel initially sought to vacate this Court's March 26, 2013 stipulation and order (the "March 26th SDNY Order") authorizing the Subpoena. However, in light of the fact that Christie's had already fully complied with the Subpoena by the time Lignel learned of Dessaint's § 1782 application, this Court denied that request as no longer justiciable, noting at the same time that the appropriate remedy in such circumstances is sanctions, "even in the absence of a live underlying case." Order of Judge Sullivan, dated January 17, 2014 (the January 17th SDNY Order"), at 10 (annexed to the accompanying Declaration of John R. Cahill, dated February 4, 2014 (the "Second Cahill Decl.") as **Exhibit 3**).

[2] As Justice Cardozo observed, "Due process is a growth too sturdy to succumb to the infection of the least ingredient of error." *Roberts v. New York*, 295 U.S. 264, 278 (1935). Notice and due process rights are fundamental to common law jurisprudence aphorized (albeit in another context) as "The law obliges us to do what is proper, not simply what is just." H. Grotius, *De Jure Belli ac Pacis* (Book 1, Chapter 1) (1625). Here, Lignel received not even a "mere gesture"

1

Manhattan) or his counsel with a copy of the Subpoena. That adverse parties are entitled to advanced notice of subpoenas is a legal principle so basic and fundamental (*see e.g.*, Fed R. Civ. P. 45) that it is impossible for Dessaint to have violated this legal obligation other than with intent. By proceeding without notice Dessaint was able to obtain broad and misleading information that he used to terrible effect (a home seizure) in a private litigation in France (the "French Action"). Without a sanction, he and other parties will be free—indeed, may be incentivized—to use U.S. courts to gain access to information (*e.g.*, financial and medical records) in secret and to use them without consequence. Because attorneys, as officers of the court, are authorized to serve subpoenas without court supervision, it is a practical necessity that a sanction be imposed if they do so without the legally required notice.

This motion for sanctions concerns Dessaint's lack of authority to issue the Subpoena to Christie's and his failure to provide prior notice of the Subpoena to Lignel. As the Court itself raised, with the proverbial toothpaste already out of the tube, the imposition of sanctions would be the most appropriate remedy for such conduct. Dessaint and Dessaint's counsel should be sanctioned for two principal reasons:

(1) Dessaint had no right to use § 1782 to get discovery that he had applied for—but which had been denied—in the Paris Court. Not only did the Paris Court specifically require that the discovery be limited, it refused Dessaint's request to get it for himself and specifically directed that it be obtained only through experts appointed by the Paris Court. Making an end around a foreign court to obtain overbroad and intrusive discovery is precisely what the United States Supreme Court prohibited in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45 (2004). Dessaint did not advise this Court that he had been denied the relief that he sought here by the Paris Court. Rather—and far worse—he mischaracterized the decision of the Paris Court as permitting him to seek discovery from Christie's "himself."

---

of notice, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950); every single legal action, from the application, to the service of the Subpoena, to the disclosure of highly confidential information (including irrelevant information), was done without a word to Lignel.

      (2) In the absence of any court order providing otherwise, § 1782 required Dessaint to follow the Federal Rules of Civil Procedure, Rule 45 of which (consistent with basic ethical requirements in New York[3]) required Dessaint to serve and give notice of the Subpoena to Lignel. Although Lignel has a residence in Manhattan and his counsel in the French Action is well-known to Dessaint, Dessaint made no effort to give notice to Lignel. Using § 1782 he quickly sought and received "all" of Lignel's records with Christie's—accurate and inaccurate, related and unrelated, to Lignel and all of his dealings with Christie's, not just records relating to the property subject to dispute in the French Action. Because Dessaint obtained responsive documents before Lignel could object to the subpoena, Lignel was grossly and unfairly prejudiced.

## SUMMARY OF FACTS

Dessaint and Lignel are parties to an ongoing estate proceeding in a Paris civil court, Case Number RG 05/05939. On January 17, 2013, the Paris Court issued an order in the French Action (the "January 17th Paris Court Order") that specifically authorized ***only***:

> "the experts appointed or substituted [by the Paris Court], as well as Valérie Levy-Beaufour (the guardian to another party to the French Action), to solicit . . . Christie's Inc. headquartered at 20 Rockefeller Plaza, New York, NY 10020, for all documents and all information relating to the sale that occurred on November 8, 2006 (sale no. 1722 – lots no. 66, 67, 68, 69, 70, 71, 73, and 74) and, in particular, the identity of the seller or sellers."[4]

In an effort to circumvent the January 17th Paris Court Order, Dessaint filed an *ex parte* application on March 20, 2013 (the "Section 1782 Application") in this Court, by Order to Show Cause. The Section 1782 Application not only sought to allow Dessaint to obtain the information that the Paris Court had ruled that only its appointed experts (the "Paris Court Experts") could obtain, it sought to serve a very broad subpoena concerning Lignel[5] that was well beyond the

---

[3] *See, e.g., Matter of Beiny*, 132 A.D.2d 190, 194 (1st Dep't 1987), detailed *infra*.

[4] The January 17th Paris Court Order is annexed as **Exhibit I** to the Declaration of John R. Cahill, dated December 31, 2013 ("First Cahill Decl."). The First Cahill Decl. is annexed to the Second Cahill Decl. as **Exhibit 1**.

[5] The subpoena also sought additional information from third-party Hasegawa Investments Ltd. ("Hasegawa"). There is no indication in the Court's docket that Hasegawa was given notice of Dessaint's Application or of the Subpoena to Christie's.

3

scope of what the Paris Court had authorized and what would be permitted under French and even United States law. By way of example, the proposed Subpoena included, as Request No. 7, a demand for "all documents and communications concerning Jean-Charles Lignel," not the documents concerning the sale and the seller as directed by the Paris Court. (First Cahill Decl., **Ex. E**.) Dessaint also sought depositions of Christie's employees, including that of Christie's General Counsel. Dessaint's Application failed to note that the January 17th Paris Court Order specifically *denied* his application for authority to "himself" seek discovery from Christie's and instead granted such authority exclusively to Paris Court Experts. (First Cahill Decl. **Ex. D**.)

Prior to this Court hearing the Section 1782 Application, Christie's agreed to accept the Subpoena from Dessaint. That agreement was memorialized in the March 26th SDNY Order. Shortly thereafter, Christie's did in fact accept service of the Subpoena from Dessaint. Notwithstanding Rule 45 of the Federal Rules of Civil Procedure, neither Dessaint nor Dessaint's Counsel served the Subpoena on Lignel or made any effort to give him or his counsel in the French Action a copy of the Subpoena, a fact which Dessaint does not dispute.[6]

Christie's began producing documents within days of the entry of the March 26th SDNY Order. (First Cahill Decl. ¶ 14.) The documents indiscriminately produced by Christie's in response to Dessaint's overly broad Subpoena include highly confidential information wholly unrelated to the French Action and well beyond what the Paris Court ordered, including personal information about Lignel and other business that he had done with Christie's, some of which is completely inaccurate. Other documents were deemed so confidential by Christie's that they are marked **"Strictly Confidential. Please destroy after use."**

---

[6] Dessaint's opposition to Lignel's motion to vacate the March 26th SDNY Order, which contains his legal position as to service of the Subpoena, is provided for in Dessaint's Memorandum of Law and the attached Declaration of Matthew Katz, dated January 7, 2014, ECF No. 8.

The Subpoena and the Christie's document production only came to Lignel's attention after Dessaint sought and received *ex parte* relief in the French Action. Because Lignel received no notice of the Subpoena or any of the proceedings leading up to it, he was unable to object or even to place in context the documents and information—important aspects of which were materially inaccurate—provided by Christie's.

At oral argument on Lignel's motion to vacate the March 26th SDNY Order, Judge Sullivan noted his skepticism that Judge Wood, in signing the March 26th SDNY Order, intended to allow Dessaint and Dessaint's Counsel to ignore the Federal Rules of Civil Procedure when serving the Subpoena ("[i]t's the language of 1782 that I think really applies. That says unless other specified, it should be in accordance with the Federal Rules of Civil Procedure"). (Transcript of Hearing, dated January 10, 2014 ("Tr."), at 34:15-17, annexed to the Second Cahill Decl. as **Exhibit 2**.)

**ARGUMENT**

I.  **Standard for Sanctions**

District courts possess the "inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Revson v. Cinque & Cinque P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). An award of sanctions under a court's "inherent power" requires the requesting party to present "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). A court's inherent power to impose sanctions remains even if there is no longer a live controversy in the underlying case. *See Schlaifer Nance*

5

*& Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) ("The District Court clearly had jurisdiction to impose sanctions irrespective of the status of the underlying case because the imposition of sanctions is an issue collateral to and independent from the underlying case.").

II. **Dessaint and His Counsel Should be Sanctioned For Misleading the Court and For Failing to Provide Lignel With the Required Notice of the Subpoena**

    A. **Dessaint and His Counsel Were Required to Provide Lignel with Notice of the Subpoena to Christie's**

Section 1782 authorizes a district court to order the issuance of a subpoena. While it does not specify the notice required for the application and provides the district courts with a degree of discretion, § 1782 makes it clear beyond possibility that, unless the court orders otherwise, the discovery shall be "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a).

Rule 45 of the Federal Rules of Civil Procedure requires giving notice to all parties ***prior*** to the service of a subpoena on a third-party such as Christie's. *See* FED. R. CIV. P. 45(a)(4). This is a plain and basic ***due process*** requirement. The purpose of requiring delivery is to "ensure receipt, so that notice will be provided to the recipient, and enforcement of the subpoena will be consistent with the requirements of due process." *Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, Nos. 06 Civ. 7764 & 06 Civ. 13516, 2008 WL 3833238, at *2 (S.D.N.Y. Aug.15, 2008) (citations omitted); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas* 262 F.R.D. 293, 304 (S.D.N.Y. 2009). Thus, even if a court permits the initial application for an order under § 1782 to be made *ex parte*, unless the court provides otherwise (which it did ***not*** in the March 26th SDNY Order[7]), the subpoena issued as a result of the application must be served

---

[7] By its terms, the stipulation had a procedural safeguard built in. It provided that Dessaint would "serve" the "Christie's Subpoena." (First Cahill Decl. **Ex. I**.) The only plausible way to construe that term is that Dessaint would serve the subpoena in accordance with Rule 45, which requires

6

on each party. The court in *In re Letter of Request From the Supreme Court of Hong Kong*

("*Hong Kong*"), stated:

> [I]t has occasionally been said that "Letters Rogatory are customarily received and appropriate action taken with respect thereto *ex parte*." However, this statement does not contemplate *ex parte* discovery taken pursuant to the Letter of Request, but rather refers only to the process of presenting the request to a court and to obtain the order authorizing discovery. Indeed, such *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.

*Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) (citations omitted).

The rules governing the service of subpoenas on parties are well-known in New York, in part due to sharp criticism that one of New York's most-prominent law firms received when, analogously to this case, one of its attorneys did not provide notice of a subpoena to the adverse party. *Matter of Beiny*, 132 A.D.2d 190, 194 (1st Dep't 1987). The *Beiny* Court noted that the service of a subpoena to gain confidential, privileged documents "diminishes the integrity of the judicial process" and dismissed derisively a claim that the subpoenaed third-party like Christie's was "in substance a volunteer in need of a subpoena as a kind of receipt for his files." *Id.*

### B. Dessaint's and His Counsel's Failure to Provide Prior Notice of the Subpoena to Lignel Constitutes Sanctionable Conduct

The failure to provide prior notice of a subpoena constitutes sanctionable conduct. *See Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 196. F.R.D. 220, 225 (W.D.N.Y. 2000) ("There is no colorable basis, either legally or factually, to support plaintiff's counsel's issuance of these subpoenas without giving prior notice to opposing counsel."). Sanctions are particularly

---

that all interested parties be given notice of the subpoena before it is served on the target. This is particularly true because § 1782 provides explicitly that discovery is conducted pursuant to the Federal Rules unless the court orders otherwise, and this Court did not order otherwise.

warranted where, as here, the issuing party received responsive documents "before the other side even knew of the subpoenas' existence." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2006 WL 2882580, at *11 (E.D.N.Y. Oct. 6, 2006) (citing *Murphy*, 196 F.R.D. at 27-28).

Instructive to this Court in assessing whether sanctions are warranted is *Kenney, Becker LLP v. Kenney*, in which the court imposed sanctions on the issuing party of a subpoena for (1) lacking the authority to issue a subpoena, (2) seeking documents beyond what had previously been ruled discoverable in the case, and (3) failing to provide prior notice of the subpoena to opposing counsel. *See Kenney, Becker LLP v. Kenney*, No. 06 Civ. 2975, 2008 WL 681452, at *2-3 (S.D.N.Y. Mar. 10, 2008).

Every legal action taken by Dessaint in this matter, from the application, to the service of the subpoena, to the receipt of highly confidential information, was done without a word to Lignel. By failing to disclose the Subpoena to Lignel, Dessaint was able to prevent Lignel from raising valid objections to the Subpoena under, *inter alia*, Fed. R. Civ. P. 45, including (1) that only the Paris Court Experts had been authorized in the French Action to seek discovery from Christie's, and (2) that Dessaint's purpose for seeking the § 1782 application was to circumvent the Paris Court by obtaining highly confidential documents beyond the limits that had been set by the January 17th Paris Court Order. No Judge of this Court has the time or resources available to supervise the service of subpoenas. If the service of a subpoena is authorized and a Federal statute mandates service pursuant to the FRCP, then, when the procedure is not followed it is a practical necessity for the Court to act in order to deter abuse. Where, as here, the damage has been done and cannot be remedied in the U.S., it is, as this Court pointed out (*see* Second Cahill Decl., **Ex. 2** at 10) appropriate for a sanction against the parties abusing the process to issue.

### i. Dessaint's Application Circumvented the Paris Court, Which Authorized the Paris Court Experts, *Not Dessaint*, to Seek Information from Christie's

Dessaint previously petitioned the Paris Court with a request to "[a]uthorize [Dessaint] to solicit Christie's France or Christie's New York for all information relating to the sale that occurred on November 8, 2006, in particular, that of the identity of the sell or sellers." (First Cahill Decl. **Ex. D** at 4.) After considering Dessaint's request, the January 17th Paris Court Order could not have been clearer: any discovery of Christie's could ***only*** be sought by "the experts appointed or substituted [by the Paris Court], as well as Valérie Levy-Beaufour." (*Id*. at 5.) "[I]n case of difficulty," the Paris Court Experts were directed to "come before the judge [of the Paris Court]"—Dessaint was ***not*** authorized to seek relief "himself." (*Id*.)

Dessaint ignored the procedure for obtaining discovery set forth by the Paris Court and instead brought the Section 1782 Application without fully informing this Court of the status of the proceedings in the French Action. Instead, Dessaint misrepresented to this Court that that the Paris Court Experts "are highly unlikely to assume the burden and incur the expense of retaining U.S. counsel to make an application to obtain any information from Christie's Inc. because Jean-Charles Lignel is himself responsible for paying the [experts'] fees and will not do so." (First Cahill Decl. **Ex. C** ¶ 15.) Not only did Dessaint have no basis for making this assertion at that time, his statement has been proven false by the recent letter from the Paris Court Experts to Christie's requesting the documents and information that the Paris Court authorized them to seek. (*See* First Cahill Decl. **Ex. F**.)

### ii. Dessaint Circumvented the Paris Court's Specific Limits on the Discovery that Could be Sought from Christie's

In addition to circumventing the Paris Court Experts' authorization to seek discovery from Christie's, Dessaint further circumvented the January 17th Paris Court Order that any such

9

discovery of Christie's would be *limited to* "[a] all documents and all information relating to the sale that occurred on November 8, 2006 (sale no. 1722 – lots no. 66, 67, 68, 69, 70, 71, 73, and 74) and, [b] in particular, the identity of the seller or sellers." Dessaint's Subpoena went well beyond the limited discovery authorized by the Paris Court and demanded, *inter alia*, "**all documents and communications concerning Jean-Charles Lignel**." (First Cahill Decl. **Ex. E**.)

Even had the Paris Court not already decided the relevant scope of information to the French Action in its January 17th Paris Court Order, such limitless requests by Dessaint—especially those that seek materials with little or no relevance to the underlying matter—are consistently found to be overbroad as a matter of law. *See e.g., In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 75 (S.D.N.Y. 2007) (requests for "any and all documents concerning or reflecting communications" with certain parties were overbroad and unduly burdensome).

As the Court in *Kenney, Becker LLP* noted, misrepresenting one's authority to issue a subpoena and seeking documents that were already ruled not to be discoverable "is relevant to whether the subpoena had an improper purpose or was filed in bad faith." *Kenney, Becker LLP*, 2008 WL 681452, at *3. To the extent that Dessaint and his counsel now argue (and Lignel obviously disputes) that the relevant documents received from Christie's justifies the means used to obtain them, courts have plainly held that such a "subpoena-first, ask-questions-later approach is clearly contrary to Rule 45 and infringes on an individual's right to control access to his or her [confidential] information." *Murphy*, 196 F.R.D. at 227. Dessaint's and Dessaint's counsel's deliberate decision not to provide prior notice of the Subpoena to Dessaint lacks a "colorable basis" in law and it evidences their bad faith, as the failure to give notice was clearly designed to avoid the motion to quash that Lignel unquestionably would have filed in light of Dessaint's lack of authority from the Paris Court to seek a subpoena of Christie's and the Dessaint's demands for

documents that the Paris Court "had already ruled were not discoverable." *Kenney, Becker LLP*, 2008 WL 681452, at *3.

## CONCLUSION

For the foregoing reasons, the relief sought by Lignel should be granted in its entirety.

Dated: New York, New York
February 4, 2013

**CAHILL PARTNERS LLP**

_s/ John R. Cahill_
John R. Cahill
Ronald W. Adelman
Paul S. Cossu
70 West 40th Street
New York, New York 10018
Tel: (212) 719–4400

*Attorneys for Jean-Charles Lignel*