UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

In re:                                                           :
                                                                 :      Misc. No: 13 Misc. 00099
                                                                 :
The Application of Barthélémy Samuel Jean Dessaint               :
for an Order Pursuant to 28 U.S.C. § 1782                        :
Compelling the Production of                                     :
Documents and Testimony by                                       :
Christie's, Inc.                                                 :

------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN OPPOSITION TO JEAN-CHARLES LIGNEL'S MOTION FOR SANCTIONS

Schindler Cohen & Hochman LLP
100 Wall Street, 15th Floor
New York, New York 10005
(212) 277-6300 (tel.)
(212) 277-6333 (fax)

*Attorneys for Barthélémy Samuel Jean Dessaint*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 4

    The French Estate Litigation .................................................................................. 4

    The Disputed Valuation Of The Delaroche Collection .......................................... 5

    Prior Efforts To Obtain Information Regarding The Value
    Of The Eight Paintings ........................................................................................... 5

    Dessaint's 1782 Application ................................................................................... 7

    Documents Produced By Christie's Confirm That Lignel
    Committed Fraud .................................................................................................... 8

    Lignel Filed His Motion To Vacate Many Months After
    Evidence Of His Fraud Was Utilized In The French Action ................................. 10

    The Court Denied The Motion To Vacate And Confirmed
    That Section 1782 Does Not Explicitly Require Notice ....................................... 11

ARGUMENT .............................................................................................................. 12

LIGNEL HAS PROVIDED NO BASIS FOR SANCTIONS ...................................... 12

I.    An Aware Of Sanctions Is An Extreme Remedy Unavailable
    Without Demonstrable Bad Faith ......................................................................... 12

II.   Dessaint Properly Noticed The 1782 Application To Christie's
    And No Other Notice Was Required Under 28 U.S.C. § 1782 ........................... 13

    A.    Dessaint's 1782 Application Was Noticed To Christie's
        And Fully Disclosed The 2013 Expert Decision To
        The Court ................................................................................................... 13

    B.    28 U.S.C. § 1782 Does Not Require Notice Of
        Document Subpoenas ................................................................................. 14

III.  Lignel Misrepresents The 2013 Expert Decision, Which Did
    Not Bar Dessaint From Seeking Discovery In The United States ........................ 17

       A.     The 2013 Expert Decision Was Limited In Scope
                And Had No Bearing On Dessaint's Ability to Gather
                Evidence For His Case............................................................................17

       B.     Dessaint Fully Disclosed The 2013 Expert Decision
                To This Court.........................................................................................18

IV.    Lignel's Sanctions Motion Is Procedurally Barred...........................................19

V.     Lignel Was Not Prejudiced By The Lack Of Notice ........................................21

CONCLUSION........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 72nd St. Realty Associates,*
   185 B.R. 460 (Bankr. S.D.N.Y. 1995) ....................................................................19

*Advanced Micro Devices, Inc. v. Intel Corp.,*
   292 F.3d 664 (9th Cir. 2002) ........................................................................16, 19

*In re Anglin,*
   No. 7:09CV5011, 2009 WL 4739481 (D. Neb. Dec. 4, 2009) ..............................15

*Anwar v. Fairfield Greenwich Ltd.,*
   800 F. Supp. 2d 571 (S.D.N.Y. 2011) ....................................................................20

*In re Application of Chevron Corp.,*
   709 F. Supp. 2d 283 (S.D.N.Y. 2010) ....................................................................16

*In re Application of DVLP LLC,*
   No. 810-cv-1272-T-33TBM, 2010 WL 3781567 (M.D. Fla. Sept. 23, 2010) ........23

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,*
   No. Civ.M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ..................19

*Boyer v. United Methodist Church,*
   No. 90-CV-13, 1990 WL 73422 (N.D.N.Y. May 31, 1990) ....................................2

*In re Braga,*
   272 F.R.D. 621 (S.D. Fla. 2011) ............................................................................17

*Burka v. N.Y. City Transit Auth.,*
   110 F.R.D. 660 (S.D.N.Y. 1986) ............................................................................23

*Carlton Grp., Ltd. v. Tobin,*
   No. 02 CIV.5065 SAS, 2003 WL 21782650 (S.D.N.Y. July 31, 2003) ..................2

*Church of Scientology Int'l v. Time Warner, Inc.,*
   No. 92 CIV. 3024 (PKL), 1994 WL 38677 (S.D.N.Y. Feb. 4, 1994) ....................12

*Colliton v. Morgan,*
   No. 07 CIV. 8269 (LTS) (THK), 2009 WL 874043 (S.D.N.Y. Mar. 31, 2009) ................3, 17

*Conopco, Inc. v. Wein,*
   No. 05 Civ. 09899RJHTHK, 2007 WL 2119507 (S.D.N.Y. July 23, 2007) ..........23

*Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*,
    No. 09-1201-PWG, 2011 WL 3651821 (D. Md. Aug. 17, 2011)............................................22

*First Indem. of Am. Ins. Co. v. Shinas*,
    No. 03 Civ.6634(KMW)(KNF), 2005 WL 3535069 (S.D.N.Y. Dec. 23, 2005) ....................22

*GMA Accessories, Inc. v. Elec. Wonderland, Inc.*,
    No. 07 Civ. 3219 PKC DF, 2012 WL 1933558 (S.D.N.Y. May 22, 2012)............................21

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ........................................................................................19

*Intel Corp. v. Advanced Micro Devices, Inc*,
    542 U.S. 241 (2004).............................................................................................................19

*Koar v. U.S.*,
    No. 96 CIV. 5166 KMW, 1997 WL 1038181 (S.D.N.Y. Sept. 2, 1997)..................................2

*Laethem Equip. Co. v. Deere & Co.*,
    No. 05-CV-10113-BC, 2007 WL 2873981 (E.D. Mich. Sept. 24, 2007) ..............................22

*In re Letter of Request for Judicial Assistance from Tribunal Civil de Port-au-Prince, Republic of Haiti*,
    669 F. Supp. 403 (S.D. Fla. 1987) ......................................................................................16

*In re Letter of Request from Supreme Court of Hong Kong*,
    138 F.R.D. 27 (S.D.N.Y. 1991) ...........................................................................................15

*In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*,
    16 F.3d 1016 (9th Cir. 1994) ..............................................................................................15

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006)..................................................................................19

*In re Ex Parte Motorola Mobility, LLC*,
    No. C 12-80243 EJD (PSG), 2012 WL 4936609 (N.D. Cal. Oct. 17, 2012).........................17

*N.Y. News, Inc. v. Kheel*,
    972 F.2d 482 (2d Cir. 1992)................................................................................................19

*Nakash v. U.S. Dep't of Justice*,
    708 F. Supp. 1354 (S.D.N.Y. 1988).......................................................................................4

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986)..............................................................................................13

*Sean Michael Edwards Design, Inc. v. Pyramid Designs*,
    No. 98 Civ. 3700(BSJ), 1999 WL 1018072 (S.D.N.Y. Nov. 9, 1999) ..................................19

*Sierra Rutile Ltd. v. Katz,*
  No. 90 Civ. 4913(JFK), 1994 WL 185751 (S.D.N.Y. May 11, 1994) ...................................22

*Snider v. Lugli,*
  CV 10-4026 JFB AKT, 2011 WL 5401860 (E.D.N.Y. Nov. 4, 2011) ....................................23

*U.S. v. Miller,*
  425 U.S. 435 (1976)..........................................................................................................22

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.,*
  No. 12 Civ. 6811 (CM) (JCF), 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) ........................21

*Walker v. Smith,*
  277 F. Supp. 2d 297 (S.D.N.Y. 2003).................................................................................13

*Matter of Weinberg,*
  132 A.D.2d 190 (1st Dep't 1987) ......................................................................................15

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage,*
  564 F.3d 110 (2d Cir. 2009)..............................................................................................13

**Statutes**

28 U.S.C. §1782(a) ...............................................................................................................14

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed.)....22

Fed. R. Civ. P. 24.................................................................................................................19

Fed. R. Civ. P. 60(b)(3).......................................................................................................11

Applicant Barthélémy Samuel Jean Dessaint ("Dessaint"), through his counsel, Schindler Cohen & Hochman LLP ("SCH"), hereby submits this memorandum of law in opposition to the motion of Jean-Charles Lignel ("Lignel") for sanctions against Dessaint and SCH (the "Sanctions Motion").

## INTRODUCTION

Lignel and Dessaint, as heirs to an important estate in France comprised mainly of a collection of French Impressionist paintings (the "Delaroche Collection"), are currently litigating the winding-up of that estate in France (the "French Estate Litigation"). Lignel's Sanctions Motion comes on the heels of the Court's rejection of Lignel's December 31, 2013 motion to vacate (the "Motion to Vacate") this Court's March 26, 2013 order (the "March 26 Order," Docket No. 4) permitting Dessaint to subpoena documents from Christie's, Inc. (the "Christie's Documents") pursuant to 28 U.S.C. § 1782, filed nine months after production of the Christie's Documents in France. By order dated January 17, 2014 (the "Jan. 17 Order," Docket No. 18), Judge Richard J. Sullivan rejected Lignel's Motion to Vacate as seeking "a meaningless vacatur of the March 26 Order – which has already been complied with – that functions solely as a signal of this Court's legal opinion [to the court in France] as to whether the Order was appropriately granted . . . ." (Jan. 17 Order at 8.)

Lignel now brings this Sanctions Motion in a transparent effort to deliver to the French court something that he can use to undercut the evidence of his multi-million dollar fraud on the estate, which is unequivocally proven by the Christie's Documents ("*recel successoral*"). But, the Sanctions Motion is a highly misleading and baseless attack aimed at wasting the resources of Dessaint, SCH and this Court. Indeed, the sheer absurdity of this motion demonstrates Lignel's ignorance of the rule that the making of a frivolous sanctions motion "can itself result in

sanctions against the movant."  *See, e.g., Koar v. U.S.*, No. 96 CIV. 5166 KMW, 1997 WL 1038181, at *2 n.2 (S.D.N.Y. Sept. 2, 1997); *Boyer v. United Methodist Church*, No. 90-CV-13, 1990 WL 73422, at *1 (N.D.N.Y. May 31, 1990) (sanctioning party for "patently frivolous" Rule 11 motion "designed to harass" and to "waste the court's time").  *See also Carlton Grp., Ltd. v. Tobin*, No. 02 CIV.5065 SAS, 2003 WL 21782650, at *8 (S.D.N.Y. July 31, 2003) (if request for Rule 11 sanctions was "destined to fail . . . . then pursuing sanctions itself constitutes a violation of Rule 11") (internal quotations and citations omitted).

Lignel's faux righteous indignation is particularly disingenuous in light of the massive fraud he appears to have committed in France.  Indeed, upon reviewing the Christie's Documents, the Paris court overseeing the French Estate Litigation (the "Paris Court") deemed it necessary to seize certain of Lignel's assets in France worth millions of euros.  Seven months later, and with an April 2, 2014 decision from the Paris Court of Appeal looming, Lignel's only strategy is apparently to bring this frivolous Sanctions Motion.

In what is now his second motion to this Court concerning a subpoena served on Christie's **nine months** ago:

1. **Lignel still has not presented any French law or an opinion of any French legal expert supporting his U.S. counsel's entirely erroneous, unsupported interpretation of the Paris Court's January 17, 2013 decision he falsely claims Dessaint acted to circumvent.**

2. **Lignel still does not dispute that the Christie's Documents demonstrate to the French courts that Lignel committed fraud on the estate**.  Indeed, the Christie's Documents prove Lignel's involvement in a 2006 auction at Christie's in which eight works of estate art sold for $18,358,000, many millions more than the €3,000,000 Lignel received for those works when he purportedly "sold" 23 paintings from the Delaroche Collection to a British Virgin Islands company, secretly owned by Lignel, a few months prior.

Further, the Sanctions Motion is misleading because, just as was the case in Lignel's meritless Motion to Vacate, this motion is premised on a false narrative.  In reality, Dessaint's

application pursuant to 28 U.S.C. § 1782 (the "1782 Application") **was not *ex parte* and did not mislead the Court or omit any relevant orders from the Paris Court**.  Rather, Dessaint's 1782 Application was filed with, and noticed to, Christie's – the object of the subpoena.  Further, all of the relevant French court decisions were translated and filed with the 1782 Application for the Court to evaluate.

Lignel bears a heavy burden in bringing his Sanctions Motion, and his categorical failure to meet this burden belies any good faith.  Indeed, the reasons to deny his motion are numerous.

First, contrary to Lignel's assertions, the plain language of 28 U.S.C. § 1782 does not require notice to participants in the foreign litigation in advance of issuance of a subpoena pursuant to the statute.  At best, the statute, is, in the words of Judge Sullivan, "ambiguous." (Transcript of January 10, 2014 Hearing ("Jan. 10 Tr.") at 28:13.)[1]  And Dessaint and SCH's reasonable interpretation of the statute bars the imposition of sanctions.  *See Colliton v. Morgan*, No. 07 CIV. 8269 (LTS) (THK), 2009 WL 874043, at *1 (S.D.N.Y. Mar. 31, 2009) ("Sanctions under Rule 11 are inappropriate when there are different interpretations of the law or when contrary controlling authority is not obvious.") (internal quotations omitted).

Second, Lignel's accusations of misconduct are premised on a deeply flawed and misinformed analysis of one order issued by a subsidiary Parisian court of limited jurisdiction. Contrary to Lignel's unfounded accusations, this order did not concern, or in any manner affect, Dessaint's efforts to obtain documents from Christie's in the United States by means of 28 U.S.C. § 1782.  Indeed, Lignel remains unable to cite to any French law or French legal opinion to justify his argument; instead, he relies solely on a declaration of his New York attorney, who misinterprets French legal authority.

---

[1]      A copy of the January 10 Transcript is attached to the Declaration of John R. Cahill, dated February 4, 2014 ("Cahill Decl."), Docket No. 26, as Ex. 2.

Third, the Sanctions Motion is a thinly-veiled attempt to seek reargument or reconsideration of Lignel's Motion to Vacate under Local Rule 6.3.  The two motions seek nearly identical relief for nearly identical purposes, but Lignel fails to satisfy the prerequisites for relief under Local Rule 6.3.  Further, the Sanctions Motion is barred by the 14-day time limitation imposed by Local Rule 6.3 and by the recent appeal Lignel has taken of the Motion to Vacate.

Fourth, Lignel has no standing to seek sanctions in this proceeding and has not moved, and cannot move, to intervene to do so.

Fifth, Lignel was not harmed by Dessaint's conduct, as, contrary to his assertions, Lignel could not have quashed the subpoena issued to Christie's.

For all these reasons and the reasons set forth in detail below, this Court should deny Lignel's Sanctions Motion and give careful consideration to whether this motion was filed in good faith.  *See, e.g., Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988) ("the court finds that by bringing a Rule 11 motion plaintiffs have contravened the very standards that they have accused the [defendant] of violating").

## FACTUAL BACKGROUND

### The French Estate Litigation

Dessaint is a U.S. citizen and a party in an ongoing litigation in the Paris Court, originally brought by his father, Fabrice Dessaint, and his uncle, Jean-Francois Dessaint, against Lignel, regarding the estate of Louise Delaroche (*i.e.*, the French Estate Litigation).  After his father's death, Dessaint and his two siblings (Edouard Louis Jean Dessaint and Clara Pauline Catharina Dessaint) continued the French Estate Litigation against Lignel, who is their father's uncle. (Declaration of Guillaume Buge, dated March 19, 2013 ("2013 Buge Decl."), Docket No. 8-8, ¶

3; Declaration of Guillaume Buge, dated January 7, 2014 ("2014 Buge Decl."), Docket No. 8-7, ¶ 10.)

Before her death in 1998 in Paris, Louise Delaroche bequeathed the Delaroche Collection to her son, Lignel.  (2013 Buge Decl. ¶ 4.)  However, on September 21, 2000, that legacy was determined by the Paris Court to be a "*legs rapportable*" (a returnable legacy), such that Lignel must bring the fair market value of the Delaroche Collection back into the estate for the purpose of winding down the estate and dividing it among the heirs, including but not limited to Dessaint (the "Estate") (*Id.*; 2014 Buge Decl. ¶ 9).

**The Disputed Valuation Of The Delaroche Collection**

In the context of the French Estate Litigation, Lignel claims that, in 2005, he sold the 23 most beautiful paintings of the Delaroche Collection to Hasegawa Investments Ltd. ("Hasegawa"), a company located in the British Virgin Islands, for three million euros (*i.e.*, €3,000,000).  (2013 Buge Decl. ¶ 5.)  Lignel urged the Paris Court to use that sales price as the purported basis of a valuation of the 23 paintings.  (*Id.*)  However, on November 8, 2006, just 8 of those 23 paintings (*i.e.*, those paintings allegedly sold by Lignel to Hasegawa for €3,000,000 a few months prior) were sold for $18,358,000, at an auction at Christie's in New York, at which the works' provenance was identified as "Property from a Private European Collection" and previously "Leon Delaroche Collection" (the "Eight Paintings") (*Id.* ¶ 6.)

**Prior Efforts To Obtain Information Regarding The Value Of The Eight Paintings**

On December 15, 2011, the Paris Court reached a decision according to which, *inter alia*, two art appraisers (the "Expert Appraisers") were designated to appraise the fair market value of the Delaroche Collection, both at the time of Louise Delaroche's death and at fair market value today (the "December 2011 Order").  (2013 Buge Decl. ¶ 12; 2014 Buge Decl. ¶¶ 11-13.)

Because Lignel claims that he sold 23 paintings of the Delaroche Collection in 2005, the Expert Appraisers are also charged with determining whether the value at which Lignel claims that he sold these paintings (*i.e.*, €3,000,000) was a fair market value.[2]  (2013 Buge Decl. ¶ 12; 2014 Buge Decl. ¶ 13.)

The December 2011 Order also required Lignel to pay €10,000 for the Expert Appraisers' fees, but because he refused to do so for more than a year, Dessaint had to ask the judge supervising the appraisal proceeding within the Paris Court,[3] the *Juge chargé du contrôle des expertises (*the "*Juge de l'expertise*")*, to issue an order to compel Lignel to pay for the Expert Appraisers to begin their appraisal work.  (2013 Buge Decl. ¶ 13; 2014 Buge Decl. ¶ 14.)  The motion to compel Lignel to pay those fees was the subject of the January 17, 2013 Paris Court decision by the *Juge de l'expertise* (the "2013 Expert Decision"), a complete copy and a certified translation of which was attached as Exhibit E to the 2013 Buge Declaration, which was filed with Dessaint's 1782 Application.  The 2013 Expert Decision also provides, *inter alia*, that the Expert Appraisers are authorized to reach out to Christie's for any information relating to the sale that took place on November 8, 2006, including but not limited to, the identity of the seller of the Eight Paintings.  (2013 Buge Decl. ¶ 14.)

Along with Dessaint's request for the *Juge de l'expertise* to compel Lignel to pay the Expert Appraisers the €10,000 that Lignel had been ordered to pay a year earlier, Dessaint also requested that he, in essence, be *deputized* to seek the third-party documents directly from Christie's and Christie's France.  (2014 Buge Decl. ¶ 25.)  However, the 2013 Expert Decision

---

[2]     Specifically, "whether Jean-Charles Lignel can show cause for selling 23 paintings for the price of 3,000,000 euros, and, if this price seems reasonable, said paintings would then have to be valued at their sales price pursuant to the provisions of Article 860 of the Civil Code."  (2013 Buge Decl., Ex. E at 19).

[3]     The appraisal proceeding is being conducted as an ancillary part of the French Estate Litigation.  (*See* 2014 Buge Decl. ¶¶ 24-25.)

had nothing to do with – and did not in any manner prohibit – Dessaint from obtaining the documents himself through the U.S. courts in an unofficial capacity.  (*Id.* ¶¶ 19, 25.)  Rather, the *Juge de l'expertise* determined that, because his powers were limited to the determination of the Expert Appraisers' mission, he could instruct the art appraisal experts to ask Christie's for information but had no jurisdiction to authorize or deputize Dessaint to do so.  (*Id.* ¶ 28.)  The *Juge de l'expertise* could not go further and certainly did not have jurisdiction to bar Dessaint from pursuing discovery in his own capacity in the United States pursuant to U.S. law.  (*Id.*)

**Dessaint's 1782 Application**

More than two months after the 2013 Expert Decision (and 14 months after the December 2011 Order), the Expert Appraisers still had not contacted Christie's, Hasegawa and/or any other entity or individual in connection with the Delaroche Collection about the Eight Paintings.  (*Id.* ¶ 42.)  Furthermore, in part because Lignel was responsible for paying the Expert Appraisers' fees by order of the Paris Court, Dessaint considered the Expert Appraisers highly unlikely to assume the burden and incur the expense of retaining U.S. counsel to make an application to obtain any information from Christie's.[4]  (*Id.* ¶ 43; 2013 Buge Decl. ¶ 15.)

Because Dessaint had reason to believe that the seller at the Christie's auction was actually (directly or indirectly) Lignel, Dessaint asked Christie's for the identity of the seller, and any information likely to show who received the proceeds from the sales of the Eight Paintings. However, Christie's refused to provide any further information without a subpoena.  (2013 Buge Decl. ¶ 9.)

Therefore, in light of an April 22, 2013 deadline in the next phase of the merits litigation (*i.e.*, when Dessaint's opposition to Lignel's appeal of the December 2011 Order was due), and

---

[4]     And Dessaint's concerns were well-founded: the Expert Appraisers did not even *first* request materials from Christie's until December 24, 2013.  (Lignel Memorandum of Law in Support of the Sanctions Motion ("Lignel Br."), Docket No. 25, at 4; Cahill Decl., Ex. 1; 2014 Buge Decl. ¶¶ 19, 42).

because Dessaint bears the burden of proof on the fraud claim in the French Estate Litigation, Dessaint retained U.S. counsel in order to obtain the documents and testimony from Christie's in March 2013. (*Id.* ¶¶ 16-17; 2014 Buge Decl. ¶¶ 18, 32-36.) Dessaint's 1782 Application was granted by Judge Kimba M. Wood on March 21, 2013 by order to show cause which, *inter alia*, ordered Dessaint to serve the 1782 Application on Christie's by hand by no later than March 26, 2013 (the "OTSC"). (The OTSC is attached as Exhibit A to the Declaration of Matthew A. Katz, dated January 7, 2014, Docket No. 8; a complete copy of the 1782 Application, with exhibits, is attached thereto as Exhibit C.)

In support of the 1782 Application, Dessaint attached a declaration from his French attorney handling the French Estate Litigation, Guillaume Buge, which fully and accurately described the French proceedings. (2013 Buge Decl. ¶¶ 3-17.) The 2013 Buge Declaration included a full, official translation of the 2013 Expert Decision and relevant excerpts from the December 2011 Order. Thus, Dessaint's 1782 Application made clear that he was seeking documents for use in the French Estate Litigation against Lignel for the purposes of demonstrating Lignel's fraud on the Estate.

Thereafter, Christie's reached an agreement to produce certain of its documents pursuant to a subpoena, provided that Dessaint refrain from issuing any subpoenas *ad testificandum* to its employees. The Court "so ordered" the substance of this agreement on March 26, 2013, which did not include any language requiring that notice be provided to Lignel, and which expressly permitted production of documents to commence within four days' time. (March 26 Order at 2.)

## Documents Produced By Christie's Confirm That Lignel Committed Fraud

The Christie's Documents demonstrate unequivocally that Lignel owns Hasegawa. Lignel is described as the "owner" of Hasegawa; the address for Hasegawa, registered as

"Hasegawa Investments Jean-Charles Lignel Private Collections," is located in one of Lignel's New York addresses; Christie's, while organizing the auction on behalf of Hasegawa, actually corresponded with Lignel to obtain his agreement on the auction prices; and, finally, Lignel told Christie's into which bank account the sales proceeds were to be transferred.  (*See* 2014 Buge Decl. ¶ 21 and Ex. C at 000009-000011, 000014, CHR000010, & CHR000110.)

Dessaint submitted these documents to the Paris Court and Lignel in the French Estate Litigation as Exhibit 21 (Pièce 21).  (*See* 2014 Buge Decl., Ex. C).  Dessaint has used the Christie's Documents to show that Lignel's purported sale to Hasegawa of the Delaroche Collection was a fraudulent attempt to avoid having the true value of those paintings be included in the Estate.  (*Id.* ¶¶ 20, 22.)  Indeed, a *Juge de l'Execution* (an enforcement judge), having examined the Christie's Documents, issued an order on May 24, 2013, seizing certain of Lignel's assets in France in order to secure eventual payment of Dessaint's claim in the French Estate Litigation.  (*Id.* ¶ 21.)  The court found that because Lignel had been organizing his French estate to render him judgment proof, there was a danger that Lignel would be "unable" to pay the amounts due to Dessaint at the end of the winding-up of the Delaroche Estate.  The *Juge de l'Execution* said the following of the Christie's Documents:

> according to the discovery proceeding initiated by Barthelemy Dessaint, Clara Dessaint and Edouard Dessaint on April 8th 2013, **it has been demonstrated that the company Hasegawa Investment is mentioned in Christie's registries as seller under the name "Hasegawa Investment Jean-Charles Lignel Private Collection." Jean-Charles Lignel is also mentioned as owner of this company.**  Besides, it is proved that Jean-Charles Lignel does not own assets on his own but only through various companies. He also does not have any bank account in France. Finally, the fact that **two of the paintings allegedly sold to Hasegawa Investment in 2005 were found in his house during the seizure operations** confirms that there is a danger that  [Dessaint's] claim will not to be paid and that paintings will remain in [Lignel's] house.  The danger of non-payment is not limited to an objective situation of

9

insolvency but also to the subjective behavior of the debtor.  It is therefore justified that all the seized assets be duly registered and stored in an appropriate art storage facility.  **The foregoing developments show indisputably that Jean-Charles Lignel has not acted, until now, with the elementary transparency that should exist within a family**.

(2014 Buge Decl. ¶ 21 and Ex. B (Order, dated May 24, 2013, from the *Juge de l'Exécution*) (emphasis added).)

Lignel subsequently endeavored to suppress the evidence of his fraud, bringing an unsuccessful motion before a pre-trial court in France to have this evidence excluded.  (2014 Buge Decl. ¶ 40 and Ex. E (Order, dated October 1, 2013, from the *Conseiller de la mise en état*).)  Although the *Conseiller de la mise en état* determined that it did not have jurisdiction to rule on the admissibility of the Christie's Documents, it did find that all of the Christie's Documents received by Dessaint had been produced to the Paris Court. (2014 Buge Decl. ¶ 40.)

**Lignel Filed His Motion To Vacate Many Months After**
**Evidence Of His Fraud Was Utilized In The French Action**

*Nine months* after Christie's produced its documents, and nearly *seven* months after the *Juge de l'Execution* ordered a seizure of some of Lignel's assets, Lignel filed his Motion to Vacate on December 31, 2013.  (2014 Buge Decl. ¶ 41.)  Dessaint believes that Lignel delayed filing the Motion to Vacate because the merits proceeding before the Paris Court of Appeal closed on January 21, 2014, and he hoped to use the Motion to Vacate as a basis to delay the conclusion of the French Estate Litigation.  (*Id.*)

The other reason for Lignel's Motion to Vacate was to obtain some sort of advisory opinion from this Court that the Christie's Documents were improperly obtained.  Indeed, just two weeks prior to filing his Motion to Vacate, Lignel filed with the Paris Court an "Opinion of Cahill Partners LLP Concerning Notice Requirement for Discovery Pursuant to 28 U.S.C. §

1782," dated December 12, 2013, in which his counsel opined that the 1782 Application was

"obtained in violation of United States law." (*See* Jan. 10 Tr. at 4:8, 19:7.) As Judge Sullivan

explained in denying the Motion to Vacate: "Lignel's U.S. counsel has already made his own

representations to the French court about the propriety of Lignel's § 1782 application (*see*

Opinion of Cahill Partners LLP Concerning Notice Requirement for Discovery Pursuant to 28

U.S.C. § 1782, dated Dec. 12, 2013, Doc. No. 17-1[ ]), and . . . this Court's ruling is sought

simply to bolster that argument." (Jan. 17 Order at 5 n.6.)  Thereafter, in response to an opinion

filed by Dessaint's counsel, Lignel filed yet another opinion from his U.S. counsel, reiterating his

assertions that Dessaint's 1782 Application was improper.

Lignel styled his December 31 motion as one "to vacate," but he failed to include a single

reference to Fed. R. Civ. P. 60, which governs motions to vacate, and made no analysis thereof.[5]

**The Court Denied The Motion to Vacate And Confirmed**
**That Section 1782 Does Not Explicitly Require Notice**

On January 10, 2014, the parties appeared before Judge Sullivan for oral argument on

Lignel's Motion to Vacate.  At the hearing, Judge Sullivan noted that "**[i]t didn't seem to [him]**

**that the French court was saying that you can't go get this other stuff**" (Jan. 10 Tr. at 7:11-

12 (emphasis added)), and that he didn't think that it was "fair" to state that the "French court's

order with respect to the experts was an implicit limiting of evidence beyond that." (Jan. 10 Tr.

at 8:2-4.)  Judge Sullivan further noted that that March 26 Order "doesn't say anything about

giving notice to Mr. Lignel." (Jan. 10 Tr. at 16:15-20.)  Critically, and contrary to Lignel's

unsupported assertion that Section 1782 requires advance notice of a document subpoena, Judge

Sullivan explained that the **statute is ambiguous**:

---

[5]  To prevail on a motion to vacate, Lignel would have to provide clear and convincing evidence that Dessaint committed fraud, misrepresentation or some other misconduct on the court. *See* Fed. R. Civ. P. 60(b)(3).

> The line [in the statute] says to the extent that the order does not prescribe otherwise, the testimony or statement shall be taken and the document or other thing produced in accordance with the Federal Rules of Civil Procedure. **It doesn't say that the subpoena shall be issued in accordance with federal rules. It is a little more ambiguous than that**. It sounds like the thing to be produced, whether it is a document or testimony, will be taken in accordance with the Federal Rules of Civil Procedure.

(Jan. 10 Tr. at 28:9-16 (emphasis added).)

Seven days later, Judge Sullivan issued his decision, in which he described the Motion to Vacate as seeking (i) "a meaningless vacatur of the March 26 Order – which has already been complied with – that functions solely as a signal of this Court's legal opinion as to whether the Order was appropriately granted . . ." (Jan. 17 Order at 8), and (ii) to prevent "future parties" from "abus[ing] the 28 U.S.C. § 1782 process . . . ." (Jan. 17 Order at 9)  The Court rejected any such relief, holding that the Motion to Vacate should be denied and that the Court "w[ould] not – and may not – issue what would clearly be an advisory opinion so that Lignel may borrow the imprimatur of the Court in his arguments before a French tribunal." (Jan. 17 Order at 4.)[6]

## ARGUMENT

## LIGNEL HAS PROVIDED NO BASIS FOR SANCTIONS

I.     **An Award Of Sanctions Is An Extreme Remedy Unavailable Without Demonstrable Bad Faith**

Lignel purports to seek sanctions under the Court's "inherent power." (Lignel Br. at 5.) However, "the Supreme Court has cautioned that because of the very potency of a court's inherent power, it should be exercised with restraint and discretion." *Church of Scientology Int'l v. Time Warner, Inc.*, No. 92 CIV. 3024 (PKL), 1994 WL 38677, at *3 (S.D.N.Y. Feb. 4, 1994) (internal quotations omitted).  Accordingly, the Court may not award sanctions absent a "finding

---

[6]     A decision on the merits of the French Estate Litigation will be rendered by the Paris Court of Appeal on April 2, 2014.

of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (same).

Bad faith is demonstrated by extraordinary costs, repeated frivolous filings, obstructive delay tactics, mendacious allegations, and no real prosecution. *Walker v. Smith*, 277 F. Supp. 2d 297, 303 (S.D.N.Y. 2003). None of those factors are even remotely present here. Though Lignel contrives two objections to the subpoena served on Christie's – the first premised on the argument that he should have received notice of the subpoena, and the second based on an unfounded misinterpretation of the 2013 Expert Decision concerning the Expert Appraisers' discovery – as described below, (i) **Dessaint was not obligated to provide advanced notice to Lignel of the subpoena** on Christie's, and (ii) **Dessaint was not, in any way, barred from seeking discovery from Christie's** and, in any event, disclosed the applicable order to this Court. Accordingly, Lignel's Sanctions Motion is entirely meritless. At a minimum, Lignel has failed to demonstrate the "exceptional" circumstances necessary to support sanctions, and his motion must be rejected. *Walker*, 277 F. Supp. 2d at 303.

II.   **Dessaint Properly Noticed The 1782 Application To Christie's, And No Other Notice Was Required Under 28 U.S.C. § 1782**

   A.   **Dessaint's 1782 Application Was Noticed to Christie's And Fully Disclosed The 2013 Expert Decision To The Court**

While Lignel repeatedly refers to the 1782 Application as having been conducted *ex parte* (*see* Lignel Br. at 3, 6, & 9), this is entirely inaccurate, because Dessaint served notice of the 1782 Application on the affected party – Christie's. Accordingly, Dessaint's 1782 Application was by no means clandestine, and Christie's had every opportunity to oppose the

13

1782 Application and/or seek to quash or modify the subpoena issued in connection therewith and/or confer with its client(s), Lignel and Hasegawa, about it.  Moreover, the subpoena to Christie's, which was also filed with the Court prior to issuance, sought the files and records *belonging to Christie's*.  Here, the Court had an opportunity (i) to review the papers submitted and (ii) to modify the OTSC and the proposed Order, in order to, *e.g.*, include a provision requiring that Lignel and/or Hasegawa be notified of the 1782 Application prior to executing it on March 26, 2013.  The Court's March 26 Order only directs that the subpoena be served on Christie's and that the production of documents commence four days later.  (March 26 Order at 2.)  Dessaint and SCH complied fully with the March 26 Order.

**B.**     **28 U.S.C. § 1782 Does Not Require Notice Of Document Subpoenas**

As Lignel himself acknowledges, 28 U.S.C. § 1782 "**does not specify the notice required for the application and provides the courts with a degree of discretion . . . .**" (Lignel Br. at 6.)  Notwithstanding this admission, Lignel contends that notice must have been provided pursuant to Fed. R. Civ. P. 45, which is incorporated by reference in Section 1782. (*See* Lignel Br. at 6-7.)  But, Lignel's argument is premised on a profound misreading of the statute, a misreading not adopted by this Circuit or any other federal court.  The statute only provides that "**[t]o the extent that the order does not prescribe otherwise**, the testimony or statement shall be taken, and **the document or other thing produced**, in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. §1782(a).  On the plain face of the language, it is clear that the Federal Rules of Civil Procedure apply to the **production** of documents in connection with a subpoena under Section 1782, and not with respect to notice of such a subpoena prior to production.  Indeed, Judge Sullivan agreed that, at a minimum, the statute did not provide clear direction as to notice, agreeing that the statute:

> **doesn't say that the subpoena shall be issued in accordance with federal rules**. It is a little **more ambiguous than that**. It sounds like the thing to be produced, whether it is a document or testimony, will be taken in accordance with the Federal Rules of Civil Procedure.

(Jan. 10 Tr. at 28:11-16 (emphasis added).)  This interpretation is entirely consistent with the case law cited by Lignel, which concerns the right to cross-examine witnesses and the court's discretion to require notice to effectuate this right. *See, e.g., In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 (S.D.N.Y. 1991) (concerning the use of depositions in a criminal action in Hong Kong and explaining that "the denial of the right to cross-examine is a substantial denial of the appropriate process").[7]  Dessaint and SCH do not dispute that federal courts have **discretion** under 28 U.S.C. § 1782 to require notice; but this discretion does not mean that the statute imposes a notice requirement.

This interpretation is also entirely consistent with a survey of 94 federal district and territorial courts around the country, **only one of which has a local rule on point**.  That rule, from the United States District Court for the Northern District of Illinois, only requires that notice to foreign adversaries be given in the event of a deposition pursuant to Section 1782 (the "Illinois Rule").  *See* N.D. Ill. Civ. R. 26.4:

> Where an **interested person requests to take the testimony or statement of any person pursuant to 28 U.S.C. §1782** for use in a proceeding in a foreign or international tribunal, notice to the parties before the foreign or international tribunal must be

---

[7]   *See also In re Anglin*, No. 7:09CV5011, 2009 WL 4739481, at *1 (D. Neb. Dec. 4, 2009) (seeking depositions of three employees); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1019 (9th Cir. 1994) (concerning the use of witness statements in a criminal action in Tokyo and noting that "the original district court order . . . failed to specify the procedures or practices to be followed").

The other cases cited by Lignel purporting to permit sanctions in the event of notice violations are entirely inapposite. None of these cases concern the notice requirements under 28 U.S.C. § 1782. Further, *Matter of Weinberg,* 132 A.D.2d 190 (1st Dep't 1987), which Lignel raised to the Court in his Motion to Vacate and at the hearing thereon, is entirely factually dissimilar and, as result, completely irrelevant to the issues at hand. In *Matter of Weinberg*, the court awarded sanctions based on violations of the C.P.L.R. because the attorney issued a subpoena aimed at obtaining privileged documents and based on a false representation to the subpoenaed party. No notice was given to any party and the law firm then used the privileged documents, "to which no law but only its deceit entitled it," to blindside a witness and then refused to produce to adversaries. *Matter of Weinberg*, 132 A.D.2d at 192.

15

provided except where the requesting party shows cause why notice could not be given.

(emphasis added).  The Illinois Rule demonstrates both that (i) Section 1782 is silent as to notice procedure in foreign litigation and (ii) to the extent notice should be required, it is for depositions and testimony, not document subpoenas.  The Illinois Rule also reinforces the propriety of Dessaint and SCH's conduct given the absence of any similar guidance or rule in this Court.

Furthermore, the interpretation of the statute urged by Lignel is problematic in light of the wide applicability of 28 U.S.C. § 1782 to various types of proceedings – not just litigations – around the world.  *See, e.g., Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 665 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004) (holding that, although preliminary, proceeding before the Directorate General-Competition of the European Commission concerning alleged treaty violations was, at a minimum, one leading to quasi-judicial proceedings sufficient to permit discovery under Section 1782); *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010), *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) (national arbitral bodies operating under UNCITRAL rules constitute "foreign tribunals" for purposes of Section 1782); *In re Letter of Request for Judicial Assistance from Tribunal Civil de Port-au-Prince, Republic of Haiti*, 669 F. Supp. 403, 406 (S.D. Fla. 1987) (judicial assistance extends to proceedings before foreign administrative and quasi-judicial tribunals and investigating magistrates).

Given the wide applicability of the statute to foreign jurisdictions and proceedings that do not utilize American-style discovery and/or may not involve traditional adversaries in a typical American bilateral litigation, it would be untenable to read a blanket notice requirement into the statute, as notice "to parties" simply may not be possible for many categories of applications under the statute.

16

After full disclosure to this Court of the relevant decisions in the French Estate Litigation and in light of: (i) the terms of the OTSC and the March 26 Order governing the issuance of the subpoena, neither of which required notice to Lignel; (ii) the notice Dessaint provided to Christie's (where many 1782 applications are in fact filed and granted *ex parte*)[8]; (iii) Lignel's lack of standing to object to the subpoena (*see infra* Section V); (iv) the language of the statute, which does not require notice and provides only that the Federal Rules of Civil Procedure apply with respect to production of documents; and (v) the Court's approval of the tight production deadlines, Dessaint justifiably did not believe he was obligated to provide notice to Lignel. Further, because Section 1782 does not require Dessaint to have noticed Lignel, at a minimum, Dessaint and SCH had reasonably interpreted the statute and, in any event, it is clear that Dessaint and SCH acted in good faith and without a shred of the bad faith necessary to substantiate a sanctions motion. *See Colliton*, 2009 WL 874043, at *1 ("Sanctions under Rule 11 are inappropriate when there are different interpretations of the law or when contrary controlling authority is not obvious.") (internal quotations omitted).

## III.   Lignel Misrepresents The 2013 Expert Decision, Which Did Not Bar Dessaint From Seeking Discovery In the United States

### A.   The 2013 Expert Decision Was Limited In Scope And Had No Bearing On Dessaint's Ability To Gather Evidence For His Case

Lignel's argument that Dessaint's 1782 Application and the March 26 Order "[c]ircumvented the Paris Court" and supposed "Paris Court's [s]pecific [l]imits on the [d]iscovery that [c]ould [b]e [s]ought from Christie's" (Lignel Br. at 9) is premised on a fundamental misinterpretation of the 2013 Expert Decision. Indeed, in his second attempt to

---

[8]       *See, e.g., In re Ex Parte Motorola Mobility, LLC*, No. C 12-80243 EJD (PSG), 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) (explaining that "[i]t is common for requests to obtain an order pursuant to Section 1782 to be conducted ex parte"); *In re Braga*, 272 F.R.D. 621, 625 (S.D. Fla. 2011) ("most § 1782 applications . . . are filed and decided *ex parte*").

seek relief from this Court, Lignel still **cites to no French law or French legal authority** to justify his argument.  He relies only on a declaration from his U.S. attorney.  Further, Lignel's contention that Dessaint's 1782 Application represents a corrosive subversion of the evidentiary limitations imposed by the Paris Court is belied by the fact that the Paris enforcement judge has already extensively reviewed and relied on the Christie's Documents, knowing full well how they were obtained in the U.S.  (2014 Buge Decl. ¶ 21, citing Decision of *Juge de l'Execution*, dated May 24, 2013.)  Furthermore, Lignel has already made an unsuccessful motion before a pre-trial court in France to have this evidence excluded.  (2014 Buge Decl. ¶ 40 and Ex. E.)

### B.   Dessaint Fully Disclosed The 2013 Expert Decision To This Court

Lignel's accusations of misrepresentation to this Court and/or malfeasance are entirely baseless.  As described above, a full translation of the 2013 Expert Decision was included with Dessaint's 1782 Application for the Court to review.  (Dessaint's Memorandum of Law in Support of the 1782 Application, Docket No. 8-4, at 4; 2013 Buge Decl., Ex. E.)  Moreover, Lignel's accusations of misrepresentation rest, bizarrely, on little more than an opinion of Dessaint's French counsel that the Expert Appraisers were unlikely to commence a Section 1782 proceeding in light of the fact that their funding was controlled by Lignel himself – an opinion that has been validated by the Expert Appraisers' extended inaction.  Indeed, the Expert Appraisers did nothing until December 24, 2013 – almost one year after the Paris Court compelled Lignel to pay their appraisal fees and but a few weeks before the close of the merits case in France.  (2014 Buge Decl. ¶¶ 19, 42-43.)  When the Expert Appraisers did finally act on December 24, 2013, they merely wrote a letter to Christie's, politely requesting documents.  (*Id.* ¶¶ 19, 42.)  They did not seek discovery through the Hague Convention or any international

channels, and they did not initiate any discovery proceeding in the U.S. [9]

## IV.    Lignel's Sanctions Motion Is Procedurally Barred

In addition to the substantive failures of Lignel's Sanctions Motion, as described above,

the motion is also barred by several procedural defects.

First, Lignel fails to explain his standing to move for sanctions. "[A]s a general rule only

parties to an action and certain other participants have standing to move for rule 11 sanctions."

*In re 72nd St. Realty Associates*, 185 B.R. 460, 473 (Bankr. S.D.N.Y. 1995) (internal quotations

omitted); *see also N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 489 (2d Cir. 1992) ("non-party and

non-participant lacked standing to seek Rule 11 sanctions").   Here, while Lignel does not invoke

Rule 11, it is unclear why this general rule would be relaxed for sanctions under the Court's

inherent authority.   *Cf. N.Y. News*, 972 F.2d at 489 (finding no standing to "complain of the

district court's failure to impose Rule 11 sanctions on its own initiative"); *Sean Michael Edwards

Design, Inc. v. Pyramid Designs*, No. 98 Civ. 3700(BSJ), 1999 WL 1018072, at *1 (S.D.N.Y.

Nov. 9, 1999) ("Because Rule 11 does not create an independent cause of action . . . non-

party['s] motion seeking Rule 11 sanctions . . . is dismissed.").   Here, Lignel is not a party to this

action, and he has not made – nor could he make – any effort to intervene either as of right or by

permission.   *See* Fed. R. Civ. P. 24 (requiring, *inter alia*, a timely motion).   Indeed, his contrived

interest in deterrence (*see* Lignel Br. at 1) is not a sufficient basis to intervene.   *See N.Y. News*,

---

[9]          Further, contrary to Lignel's argument, even if Dessaint's 1782 Application had been an effort to
circumvent French discovery limitations (which it was not), such an effort is not the *sine qua non* barring discovery
under Section 1782.   Indeed, *In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006), cited by Lignel in his
Sanctions Motion, confirms that, "[o]nce the statutory requirements are met, a district court is free to grant discovery
in its discretion" under the statute.   *Id.* at 192 (internal quotations omitted).   Accordingly, the four factors set forth in
*Intel Corp. v. Advanced Micro Devices, Inc*, are discretionary and to be weighed as deemed appropriate by the
district court.   542 U.S. 241, 260-62 (2004); *see, e.g., Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012)
(exercising discretion and weighing factors); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No.
Civ.M19-88 (BSJ), 2006 WL 3844464, at *5 n.13 (S.D.N.Y. Dec. 29, 2006) (granting application for discovery and
explaining that the *Intel* factors "should be weighed on a case-by-case basis").
              Similarly, French case law affords great flexibility when it comes to proof.   (2014 Buge Decl. ¶ 35.)

972 F.2d at 486 (proposed intervenor's "remote interest in a streamlined, abuse-free judicial system is not a significantly protectable interest within the meaning of [Fed. R. Civ. P.] 24(a)(2)") (internal quotations omitted).

Second, the Sanctions Motion is, at its core, a motion for reargument or reconsideration, which should have been brought pursuant to this Court's Local Rule 6.3. Indeed, though the original Motion to Vacate and the Sanctions Motion purport to seek different relief (vacatur and sanctions, respectively), in reality, both motions seek the same remedy of deterring potential (and purported) abuses of the Section 1782 statute and providing an advisory opinion to the Paris Court. (*Compare* Jan. 10 Tr. at 9:17-25 (confirming that Motion to Vacate will be used in France to demonstrate "what the law is"), 28:20-24 (clarifying that Motion to Vacate was designed to deter future conduct) *with* Lignel Br. at 1 (seeking sanction "to deter further such conduct"). *See also* Jan. 17 Order at 9 (addressing Lignel's argument that granting the Motion to Vacate was necessary to avoid "rampant violations of due process and the Federal Rules of Civil Procedure").[10] In a motion to reconsider, Lignel must demonstrate controlling law or factual matters put before the Court in its decision on the underlying matter that the Court overlooked and that might reasonably be expected to alter the conclusion reached by the Court. *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 573 (S.D.N.Y. 2011). Lignel fails to do so, and so his Sanctions Motion must be rejected.

Furthermore, given that Dessaint does not seek further discovery from Christie's, and represented as much to this Court in the hearing before Judge Sullivan (*see* Jan. 10 Tr. at 24:12-16), deterrence is pretextual.

---

[10]    Lignel apparently believes the Federal Rules of Civil Procedure are not binding on him. As described above, in addition to failing to mention Local Rule 6.3 here, he also failed to address Fed. R. Civ. P. 60 in bringing his original Motion to Vacate. (Jan. 10 Tr. at 10:14-11:11).

The Sanctions Motion should likewise be denied because it effectively seeks reargument or rehearing of the Motion to Vacate, and it was untimely filed, past the 14-day deadline to seek reargument or reconsideration.  (*See* Jan. 17 Order and Sanctions Motion, dated February 4, 2014, Docket No. 24.)  Finally, requesting reargument is improper because Lignel has already appealed the January 17 Order, in what is his <u>third</u> attempt to punish Dessaint for revealing his fraud to the French Court.  (*See* Docket No. 23.)

## V.   Lignel Was Not Prejudiced By The Lack Of Notice

Lignel's serial applications to this Court represent his frustration at the revelation of his massive fraud.  But, although the disclosures were damaging to his case in France, he could not have prevented them by moving to quash.  His assertions to the contrary (Lignel Br. at 10) are wholly meritless because Lignel would have been unsuccessful in a motion to quash the subpoena for at least the following reasons.

First, "[a] party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party."  *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811 (CM) (JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (*citing Estate of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009)); *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ. 3219 PKC DF, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012) (same).  Accordingly, this Court would have been required to ignore Lignel's complaints about the scope of the subpoena served on Christie's.  Indeed, Christie's is a sophisticated corporate entity and was capable of addressing any such concerns.

As a matter of law, the only party with standing to make an objection on the basis of burden or scope was Christie's.  Here, the subpoena was sufficiently tailored to elicit highly relevant information, including but not limited to, the identity of the seller of the Eight Paintings, and other documents probative of the valuation of the Lignel Estate and Dessaint's stake in the

Delaroche Estate.  (2013 Buge Decl. ¶ 20.)  The Christie's Documents are, in fact, crucial to proving that Lignel sold the paintings at the Christie's auction under an assumed identity, for many times the price that he "received" from the sale to Hasegawa.  (2013 Buge Decl. ¶¶ 10-11, 21.)  At the hearing on the Motion to Vacate, it was made clear that, had he received notice, Lignel's only objection would have been overbreadth:

> THE COURT: If you had had notice, what would you have argued to Judge Wood?
>
> MR. CAHILL: We would have argued that under Intel and under basic principles, a subpoena that seeks all documents --
>
> THE COURT:  Overbreadth you would have argued.

(Jan. 10 Tr. at 29:9-13.)

Second, "[i]n the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness."  *First Indem. of Am. Ins. Co. v. Shinas*, No. 03 Civ.6634(KMW)(KNF), 2005 WL 3535069, at *3 (S.D.N.Y. Dec. 23, 2005) (internal quotations omitted); *see also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed.) (same).  Here, Lignel has asserted no privilege with respect to the documents produced by Christie's, and thus he would not have been permitted to quash the subpoena.  While Lignel might have attempted to assert a "personal right" to the information disclosed, that, without more, does not confer standing – particularly, where, as here, the subpoena to Christie's requested documents related to the sale of the Eight Paintings and communications and valuations relating thereto.[11]  *See, e.g., Laethem Equip. Co. v. Deere & Co.*,

---

[11]     Courts interpret a narrow "personal right" to refer to information concerning "personal financial affairs" or commercially sensitive information.  *See, e.g., Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913(JFK), 1994 WL 185751, at *2-*3 (S.D.N.Y. May 11, 1994).  Lignel complains that Christie's produced "highly confidential documents." (Lignel Br. at 9.)  However, sales and purchase and "information listing Lignel's addresses in New York and Paris, Lignel's attorney, other associates of Lignel, and his email address" (*see* Lignel Memorandum of Law in Support of Motion to Vacate, Docket No. 15, at 9) cannot constitute a protectable personal right.  *C.f., U.S. v. Miller*, 425 U.S. 435, 442 (1976) (finding no expectation of privacy with respect to "financial statements and deposit slips," which

No. 05-CV-10113-BC, 2007 WL 2873981, at *17 (E.D. Mich. Sept. 24, 2007) (denying motion

to quash subpoena on third party and rejecting "assertion of a personal right or privilege" where

"defendant has not offered an example [about] the type of information [defendant] [wa]s

concerned about protecting . . . along with a justification of the personal right or privilege

[defendant] ha[d] in that document").  Other than the disclosure of his fraud, Lignel has not

offered any explanation why disclosure of the documents jeopardized any personal rights.

Third, though Lignel complains about the disclosure of purportedly confidential

information, this, without more, would not have prevented Christie's from producing its

documents, in light of (i) the critical nature of the evidence, (ii) the fact that it potentially

exposes a massive fraud under French law, and (iii) the unavailability of the evidence from other

sources.  *See, e.g., Burka v. N.Y. City Transit Auth.*, 110 F.R.D. 660, 666-67 (S.D.N.Y. 1986)

(ordering disclosure of confidential personnel files "critical" to plaintiff's case.); *Conopco, Inc.

v. Wein*, No. 05 Civ. 09899RJHTHK, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007)

(denying motion to quash, notwithstanding " privacy interest in . . . personal financial affairs,"

because confidential information was "relevant to the claim or defense of any party"); *Snider v.

Lugli*, CV 10-4026 JFB AKT, 2011 WL 5401860, at *3 (E.D.N.Y. Nov. 4, 2011) ("even the

confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure,

which govern the discovery of information relevant to the claims and defenses in a federal court

action") (internal quotations omitted); *In re Application of DVLP LLC*, No. 810-cv-1272-T-

33TBM, 2010 WL 3781567, at *2 (M.D. Fla. Sept. 23, 2010) (denying motion to quash

---

"contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business"); *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, No. 09-1201-PWG, 2011 WL 3651821, at *2 (D. Md. Aug. 17, 2011) (finding no personal right in telephone bills, invoices, and records).  Even if such information did implicate some privacy right, standing to challenge the disclosure of such information would not preclude disclosure here.  *See Sierra Rutile Ltd.*, 1994 WL 185751, at *3 (denying motion to quash where "some privacy interests [we]re at stake").

subpoena issued pursuant to 28 U.S.C. § 1782 where the discovery sought was "based on fraudulent conduct, theft, and kickbacks").

## CONCLUSION

For all the foregoing reasons, Lignel's Sanctions Motion should be denied.  Further, Dessaint and SCH respectfully request that the Court give serious consideration to whether the plainly frivolous Sanctions Motion warrants the imposition of sanctions on Lignel and his counsel.

Dated: New York, New York
       February 18, 2014

SCHINDLER COHEN & HOCHMAN LLP

By:_____
       Rebecca L. Fine
       Matthew A. Katz
100 Wall Street, 15th Floor
New York, NY 10005
(212) 277-6300

*Attorneys for Barthélémy Samuel Jean Dessaint*

24